UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-01438-WYD

KAREN BANKS,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

---

**ORDER**

---

        THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's claim for disability insurance benefits ["DIB"].  For the reasons stated

below, this case is reversed and remanded to the Commissioner for further factfinding.

I.        <u>BACKGROUND</u>

        Plaintiff, born in August 1954, was 46 years old on the date of her alleged

disability and 53 years old on the date of the decision at issue.  (Transcript ["Tr."] 83,

726.)  She has a high school equivalent diploma and finished two years of college.  (*Id.*

119, 126-30, 726-27).  She has past relevant work experience as a military personnel

specialist, an airport screener, and a computer assembler.  (*Id.* 114, 128, 748.)

        On September 11, 2003, Plaintiff filed an application for DIB under the Social

Security Act ["the Act"], 42 U.S.C. §§ 401-33.  (Tr. 83-86). Plaintiff alleged that she

became disabled in January 2001 due to an entrapped left inguinal (relating to the groin

or lower abdomen) nerve, "humps" on both shoulders, vertebrae out of alignment, an injured back, and an enlarged heart. (*Id.* 113.) She wrote, "the pain is excruiating (sic) and I never know when it will attack me or how long it will stay with me." (*Id.*) The Colorado Disability Determination Services denied Plaintiff's claim at the initial determination stage. (*Id.* 27, 51-54.) An administrative law judge ["ALJ"] held a hearing in June 2005 and issued a decision on August 24, 2006, finding at step four that Plaintiff could perform her past relevant work and was not disabled under the Act. (*Id.* 28-35.)

On June 8, 2007, the Appeals Council reviewed the August 24, 2006 decision of the ALJ. (Tr. 41-45.) It issued a partially favorable decision from August 23, 2004 (Plaintiff's fiftieth birthday) and remanded the case to the ALJ to determine whether Plaintiff was disabled prior to August 23, 2004. (*Id.* 41-45.)

The ALJ held another hearing on December 13, 2007, and issued a decision dated January 29, 2008, in which he concluded at step five that a significant number of jobs existed in the national economy that Plaintiff could perform. (Tr. 15-26.) The ALJ therefore concluded that Plaintiff was not disabled under the Act. (*Id.* 29.)

More specifically, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 31, 2001, the alleged onset date. (Tr. 17, Finding 2.) At step two, the ALJ determined that Plaintiff had the following "severe" impairments: left inguinal neuralgia, disorder of the lumbar and cervical spine, affective disorder, and anxiety. (*Id.*, Finding 3). At step three, the ALJ found that Plaintiff's impairments did not meet or equal the specific criteria of a listed impairment, considering Listings 1.00, 11.00, and 12.00. (*Id.* 17, Finding 4.)

The ALJ considered Plaintiff's symptoms and alleged limitations consistent with the regulations and, following the two-step process, determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.  (Tr. 23).  He determined that Plaintiff retained the residual functional capacity ["RFC"] to perform a reduced range of sedentary work that allows for frequent position changes, does not require more than occasional bending, stooping, kneeling, and squatting, and that has simple tasks that do not require judgment.  (*Id.* 18, Finding 5.)

As to Plaintiff's ability to work, the ALJ acknowledged that the Appeals Council determined that Plaintiff could not perform her past work as an airport screener and personnel technician.  (Tr. 24.)  The ALJ found at step five, however, that other work exists in significant numbers in the national economy that Plaintiff could perform.  (*Id.* 25, Finding 10.)  Accordingly, he found that Plaintiff was not disabled under the Act between January 31, 2001 and August 22, 2004.  (Tr. 26, Finding 11.)

The Appeals Council declined review on January 9, 2009.  (Tr. 7-9.)  This appeal followed.  The ALJ's decision became the "final decision", permitting judicial review of the decision.  42 U.S.C. § 405(g).

Plaintiff claims that the ALJ violated the medical opinion standards and the treating physician rule in connection with his RFC assessment.  She also asserts that he did not comply with the directive of the Appeals Council to reevaluate her neuralgia attacks and the opinions of Dr. Velma Campbell and the state agency physician.  (Tr. 43.)  She further argues that the ALJ did not establish his burden at step five because

the hypothetical question failed to include all of Plaintiff's impairments. Accordingly, she argues that the ALJ's decision is not supported by substantial evidence and must be reversed or that benefits should be awarded outright.

The Commissioner maintains in response that substantial evidence supports the ALJ's determination that Plaintiff was not disabled because work exists in the national economy that she could perform. Further, he argues that the RFC determination is supported by substantial evidence, that the ALJ complied with Tenth Circuit law and the regulations when he evaluated the medical source opinions, and that the ALJ met his burden at step five of the sequential evaluation.

II.     ANALYSIS

    A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

       B.      <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

       1.      <u>The RFC Determination and Weighing of the Medical Evidence</u>

The ALJ's decision at issue was made in response to the remand of the case by the Appeals Council for reevaluation of the medical opinions of Dr. Velma Campbell and the state agency physician and discussion of which limitations are accepted and rejected.  (Tr. 43.) The ALJ was also directed to reassess Plaintiff's RFC for the period from January 31, 2001 and ending August 22, 2004, "and provide supporting rationale with citations to the evidence in support of the assessed limitations."  (*Id.*)

On remand, the ALJ discussed Dr. Campbell's assessment and stated that he gave "great weight" to it.  (Tr. 22-23.)  As to the state agency physicians, he found the mental assessment was "consistent with the record as a whole".  (*Id.*)  I assume he was referring to the mental assessment of Dr. Glasco, although he did not make this clear. As to the physical assessment of state agency physician. Dr. Happer, the ALJ appeared to rely on it for the RFC assessment except that he found Plaintiff could do sedentary rather than light work.  (*Id.* 24.)  While the ALJ stated that he considered all of the medical evidence, Plaintiff is correct that he did not expressly discuss the treating sources or state what weight, if any, he gave to their opinions.  This includes the findings of psychologist Dr. Beverly Adams-Hardin and nurse practitioner Debra Poole.

Specifically, as to Dr. Adams-Hardin, the ALJ did not mention or discuss her opinions from June 16, 2003 until the end of the August 22, 2004 period at issue.

Further and importantly, he ignored Dr. Adams-Hardin's opinion in a letter dated June 7, 2005 that Plaintiff was totally and permanently disabled and that "[s]he is not employable at this time [and] is not expected to become so in the future". (Tr. 638.)

She also opined:

> Ms. Banks is chronically and severely depressed. She is unable to sleep secondary to the depression. The patient suffers from poor concentration and memory as well. She has difficulty following either written or verbal directions and therefore is frequently unable to complete tasks. This veteran is often fatigued due to her depressed mood and displays psychomotor retardation. Ms. Banks suffers from frequent suicidal ideation. Fortunately, she is often too fatigued to act on her own suicidal thoughts. This veteran has attempted to moderate her depression with a myriad of psychiatric medications to no avail. Although medications do help her to function at an extremely low level she has not obtained true relief from depression.

*Id.*

While this report was made after the period of time the ALJ was analyzing, the Commissioner is incorrect in arguing that it did not need to be considered by the ALJ. The ALJ is required to consider all evidence in the record when he determines whether a claimant is disabled. *Carpenter v. Chater*, 537 F.3d 1264, 1266 (10th Cir. 2008). This includes evidence after the relevant time period. Indeed, "evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993).

This report seems particularly appropriate for the ALJ to have considered since it appears to be consistent with Dr. Adam-Hardin's assessment in January 2004 of a GAF score of 45 for Plaintiff at that time and 50 in the past year. (Tr. 318). "The Global Assessment of Functioning (GAF) is a subjective determination based on a scale of 1-100 of 'the clinician's judgment of the individual's overall level of functioning.'" *Salazar v. Barnhart*, 468 F.3d 615, 624 (10th Cir. 2006) (quoting DSM-IV at 32.) A GAF score between 41 and 50 indicates "'[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job).'" *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 (10th Cir. 2004) (quoting DSM-IV 34). Also during the relevant period in question, treating nurse Poole diagnosed a mood disorder secondary to chronic pain and assessed Plaintiff's GAF score at 50 on September 15, 2002 (Tr. 392-93) and 48 on October 21, 2002. (*Id.* 385.)[1]

I acknowledge that standing alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work." *Lee*, 2004 WL 2810224, at *3. "The claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere." *Id.* "A GAF score of fifty or less, however, does suggest an inability to keep a job." *Id.* The ALJ cannot simply ignore this evidence, as the ALJ is "tasked with determining the level of [the claimant's] functioning within the six domains." *Simien v. Astrue*, Slip Copy, No. 06-5153, 2007 WL 1847205,

---

[1] Other medical providers assessed similar GAF scores, from a high of 55 in 2000 to scores from 35 to 50 in 2001, 2002 and 2003 and 2004. (*Id.* 459, 455, 327-28, 347, 531, 536-37.)

at *2 (10th Cir. 2007) (finding that the ALJ erred in ignoring the claimant's GAF scores that ranged from 30 to 50). In this case, not only did the ALJ ignore the above evidence during the relevant time period, he selectively applied the evidence, citing only to a GAF score of 55 outside the claimed period of disability. (Tr. 19.) This was improper. *See Carpenter*, 537 F.3d at 1264 (the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence'") (quotation omitted).

The opinions and findings of Dr. Adams-Hardin needed to be taking into account in assessing Plaintiff's RFC and ability to work, and the ALJ had to discuss what weight to give these opinions. That is because an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). "A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994). The ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled." *Id.* at 290.

Further, even if an ALJ decides that a treating physician's opinions are not entitled to controlling weight, this does not allow him to reject their opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004); SSR 96-2p, 1996 WL

374188, at *4 (1996). Instead, the physician's opinions are "'still entitled to deference and must be weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). These factors are set out in 20 C.F.R. § 404.1527(d). Where an ALJ fails to articulate the weight given to a treating physician's opinion, as here, the court cannot meaningfully review the ALJ's determination. *Robinson v. Barnhart*, 366 F.3d 1116, 1083 (10th Cir. 2004). The ALJ failed to comply with the above treating physician rules.

As to nurse Poole, another treating source, the ALJ cannot reject her opinions on the basis that she is not an acceptable medical source. The ALJ is still required to consider and weigh such opinions. Indeed, Social Security Ruling 06-03p specifies how medical sources who are not "acceptable medical sources" such as nurse Poole should be evaluated. SSR 06-03p, 2006 WL 2329939 (2006). It states that their opinions "should be evaluated using the applicable factors" for weighing opinion evidence. *Id.* at 5. It further makes clear that opinions from such sources can even outweigh opinions from "acceptable medical sources," in situations where, for example, they have seen the claimant more often, provide better supporting evidence or explain their opinion better. *Id.* The ALJ erred in not conducting such an evaluation in regards to nurse Poole, particularly given her length of treatment of Plaintiff and comprehensive opinions.[2]

I also find that the ALJ erred in not actually stating what actual evidence he relied on for his RFC assessment. While the ALJ's decision suggests that he relied on the

---

[2] SSR 06-03p also requires that the ALJ take into account the Veteran Administration's ["VA"] disability rating. (Tr. 582-92, 595-610.) While the Commissioner is not bound by such assessments, this evidence "cannot be ignored and must be considered". *Id.*, 2006 WL 2329939 at *6. The ALJ should also take into account excellent work history. *See Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2000) (where a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work").

assessments of Dr. Campbell or the state agency physicians, he erred in not making this clear in the record. Further, he did not explain what specific findings of these providers he gave weight, which he rejected, and why. Thus, contrary to arguments of the Commissioner, I am unable from the record to determine precisely how he came up with the RFC. This is error.

Social Security Ruling 96-8P directs that the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" . . . the ALJ must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved". SSR 96-8p, 1996 WL 374184, at *7 (2006). From this, it is axiomatic that the ALJ must explain what evidence he relies on to support his RFC finding. *Haddock v. Apfel*, 196 F.3d 1084, 1088-1089 (10th Cir. 1999). The failure to do so requires a remand. *Southard v. Barnhart,* 72 Fed. Appx. 781, 784-785 (10th Cir.2003); *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. 2005).

This error is particularly troublesome since the ALJ's RFC assessment does not match precisely any of the medical providers' assessments. For example, to the extent the ALJ may have relied on state agency physician Dr. Glasco's mental assessment, he found that Plaintiff could perform work needing little or no judgment and work involving simple duties that can be learned within one month. (Tr. 623). He also found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to

complete a normal workday and workweek without interruption; and to interact appropriately with the general public.  (*Id.* 621-22).

The ALJ erred because his mental RFC assessment did not take into account the majority of these limitations, all of which impact the ability to work.  The Tenth Circuit has stated that the ability to perform simple work can be decreased by moderate impairments, including impairments in the ability to understand, remember and carry out detailed instructions.  *Bowers v. Astrue*, No. 07-5114, 2008 WL 794853, at *3 (10th Cir. March 26, 2008) (finding error with a hypothetical question for psychological limitations that did nothing more than limit the claimant to simple work that was low in stress and brief in interactions with others when the claimant was found to be seriously impaired in her ability to concentrate and pay attention for extended periods and moderately impaired in eight other areas); *see also Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).

To the extent the ALJ gave great weight to Dr. Campbell's opinion, she stated that her physical capabilities assessment was limited to times when Plaintiff was "not having an episode of acute neuralgia." (Tr. 615.)  The ALJ ignored this finding which may be very significant in the context of Plaintiff's ability to perform sustained full-time work.  This error is particularly troublesome given the Appeals Council's directive to reassess Dr. Campbell's opinions regarding Plaintiff's neuralgia.  (*Id.* 45.)  I also note that Dr. Campbell provided support for Dr. Glasco's opinion, stating that "[t]here are psychological conditions, associated with the medical conditions, that affect the patient's ability to rehabilitate and work." (*Id.*)  The ALJ also ignored that opinion.  An ALJ cannot

omit impairments from an opinion or report that he relies on without explanation: *Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, *5 (10th Cir. Feb, 8, 2005) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist. . ., the resulting hypothetical question was flawed"). Further, the ALJ failed to take into account that Dr. Campbell was both a treating physician and consultative examiner, and should have determined whether her opinion was entitled to controlling weight.

I also find that the ALJ erred in not considering all of Plaintiff's impairments including, among others, a diagnosed mood disorder, physical pain disorder and/or psychological somatoform pain disorder, and headaches. That is because "[*a]ll* medically determinable impairments, including non-severe impairments, must be taken into account in assessing a claimant's RFC." *Mushero v. Astrue*, No., 2010 WL 2530728, at *2 (10th Cir. June 24, 2010) (emphasis in original) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009).

The Tenth Circuit's opinion in *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) is instructive as to the pain disorders. It held that the ALJ erred in not considering "'the possibility that psychological disorders combined with physical problems,'" the diagnosis of a somatoform disorder, and in not treating "plaintiff's somatic preoccupation as a manifestation of his mental impairment or consider how that impairment, along with plaintiff's depression and anxiety, affected his perception of pain." *Id.* at 1021 (quotation omitted); *see also Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985) (finding that "all of the . . . reports recognize a psychological component which amplifies Teter's pain, and none of them dismisses this element as not genuine" and that "the only reasonable

conclusion to be drawn from this record is that Teter is completely disabled by his pain"). The ALJ erred in the same manner in this case.

The Commissioner argues, however, that the ALJ's RFC assessment is consistent with that assessed by the Appeals Council, and that the ALJ was not directed to reconsider any evidence other than that of Dr. Campbell and the state agency physicians. I disagree. First, the Appeals Council directed the ALJ to reassess Plaintiff's RFC. In doing so, the ALJ necessarily had to consider all the evidence and follow the rules and regulations regarding how to weigh medical sources. Second, the Appeals Council is held to the same standard as an ALJ. To the extent the Appeals Council did not properly consider all of Plaintiff's impairments, as noted by the medical sources, its opinion regarding Plaintiff's RFC is also error.

Based on the foregoing, I find that a remand for further factfinding is required. On remand, the ALJ must keep in mind that "[t]he opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson*, 366 F.3d at 1084. [W]hen a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [sources'] reports to see if they outweigh the treating [source's] report, not the other way around.'" *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. Feb. 20, 2003) (quoting *Goatcher*, 52 F.3d at 290).

On remand, the ALJ must articulate and adequately assess the nature and extent of Plaintiff's mental limitations to enable a correct and complete determination of her

RFC.  Among other things, he must consider "'the claimant's ability to engage in the activities of daily living; to interact appropriately with the public, supervisors, and co-workers; to focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.'"  *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) (quotation omitted).  The ALJ may not focus merely on whether Plaintiff can physically perform certain jobs; he must also determine whether Plaintiff "'can *hold* whatever job [s]he finds for a significant period of time.'"  *Id.* at 1442 (emphasis in original) (quotation omitted).  The ALJ did not appear to take the above rules into account in his decision.

The ALJ must also consider Plaintiff's impairments both individually and in combination.  The regulations state that if a favorable decision cannot be reached on consideration of just the person's physical impairments or mental impairments, then the ALJ is required to carefully consider the person's combination of physical and mental impairments, including impairments found not to be severe.  20 C.F.R. § 404.1523.  The ALJ applies the wrong standard when he considers only a claimant's impairments individually.  *Carpenter*, 537 F.3d at 1266.  Here, I find no analysis as to how the combination of Plaintiff's severe and non-severe impairments affect her ability to work.

I also find errors with the ALJ's pain analysis and credibility determination that must be corrected on remand.  As to pain, while he referenced the appropriate factors to be considered, the ALJ was extremely selective in his application of the evidence.  He discounted Plaintiff's pain based on a myriad of things, including the fact that Plaintiff

refused offers to reduce her pain on one occasion, was noncompliant with medications, asked for additional pain medication, and drove herself to and from an appointment. (Tr. 20-21.)  Further, he pointed to occasions where the pain was  referenced to be controlled by medications, while ignoring all the other records documenting that Plaintiff's pain was not in control.  As previously noted, an ALJ may not use only evidence that is favorable to his decision while ignoring the other evidence that may be unfavorable.  *Carpenter*, 537 F.3d at 1265.  Further, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490.

As to the alleged noncompliance with medications, I find the Tenth Circuit's decision in *Robinson* instructive.  In that case the ALJ rejected a treating physician's opinion based the alleged failure to take medication.  *Robinson*, 366 F.3d at 1083.  The Tenth Circuit found that this was "an improper basis to reject the treating physician's opinion" as, among things, the doctor's treatment notes did not indicate that he believed that claimant was sufficiently stable to return to work even when on medication.  *Id.* Further, it found that "[g]iven that [the doctor] was consistently reporting that claimant was unable to work as a result of her mental illness, the references to claimant being "stable" may have simply meant that she was not suicidal."  *Id.*  The ALJ also erred because he did not give the claimant or her physician an opportunity to explain the reasons for her failure to take medications.  *Id.*; *see also Ragland v. Shalala*, 992 F.2d 1056, 1058 (10th Cir. 1993).  The ALJ erred in the same manner in this case.

I also note that the ALJ pointed to certain normal objective findings by Dr. Campbell (Tr. 22—"full range of motion, intact sensation, no joint deformity or swelling, normal grip strength, no spasm and straight leg raising, etc.) to discount Plaintiff's complaints of pain. However, "objective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well. . . ." *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988). Given the extensive findings in the record documenting chronic pain, myofascial pain syndrome, and other pain disorders as well as severe impairments that can clearly cause pain such as left inguinal neuralgia and disorder of the lumbar and cervical spine, I find the reliance on isolated objective results to discount Plaintiff's pain was error. *See also Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) ("consistent diagnosis of chronic pain syndrome can serve as an objective basis for pain").

Finally, I find that the ALJ erred in not explaining how Plaintiff's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, including her need for even more drugs than prescribed, result in a conclusion that she is unlimited in any regard by pain. *See Carpenter,* 537 F.3d at 1268. The ALJ also failed to analyze the impact of fatigue and trouble sleeping which is repeatedly referenced in the medical records. This also is error that requires remand. *Clark v. Barnhart*, No. 02-5093, 2003 WL 1909289, at *2-4 (10th Cir. 2003).

2.      Whether the ALJ Erred at Step Five

Since the RFC must be reassessed on remand, this means that the hypothetical question must also be reassessed. Testimony elicited by hypothetical questions that do

not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision. *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993); *see also Wiederholt*, 2005 WL 290082, *5.

I also find other errors with the ALJ's decision which require a remand. First, the ALJ's hypothetical question did not precisely match the RFC that he assessed. (Tr. 699.) For example, the RFC stated that Plaintiff needed "frequent position changes" (*id.* 18) while the hypothetical question called only for the need to change positions briefly once an hour". (*Id.* 699.) The RFC assessment also limited Plaintiff to "simple jobs that do not require judgment." (*Id.* 18). The hypothetical question stated instead that Plaintiff was "limited to jobs with an SVP of 2 or less and GED levels of one, two and three. (*Id.* 699.)

The Tenth Circuit has stated that a limitation for simple work tasks is inconsistent with the demands of level-three reasoning. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). It may also be inconsistent with level-two reasoning. *See Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997); *cf. Mattison v. Astrue*, 2009 WL 2591628, at *29 (E.D. Wis. 2009) (noting that courts are divided on whether a limitation to "simple, routine work" is consistent with level two reasoning). Since the VE opined that Plaintiff could perform jobs that require level two or three reasoning, this may conflict with the DOT and/or Plaintiff's RFC. This needs to be reassessed on remand with the input of the vocational expert. *See Lucy*, 113 F.3d at 909 (remanding to obtain VE testimony to determine whether a claimant limited to simple instructions could engage in unskilled work with jobs that require reasoning at level two or higher).

Finally on remand, the ALJ should keep in mind that if he "finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. June 17, 1994). The ALJ "must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" *Id.* (quoting *Thompson*, 987 F.2d at 1490-91) (further quotations omitted). "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do . . . work." *Id.*; *Thompson*, 987 F.2d at 1491.

III.    CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 29, 2010

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        Chief United States District Judge